```
1  Raymond G. Robinson, #94408
   Robinson-Legal
2  41955 Fourth Street, Ste. 310
   Temecula, CA 92590
3  951-699-8200 fax: 800-704-4326
   fosscap@mac.com
4  Attorneys for Plaintiffs
   PETER FODOR, BARBARA FODOR and
5  CHANEL AIR LLC
```

FILED
CLERK US DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
11 OCT 13 PM 3:38
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PETER FODOR, an individual,
BARBARA FODOR, an individual, and
CHANEL AIR, LLC, a California limited
liability company,

  Plaintiffs,

v.

MICHAEL IAN BLAKEY, aka Michael
Blake, aka Lord Michael Blakey, an
individual,
MICHAEL BLAKEY, INC., a California
corporation,
THE MICHAEL BLAKEY REVOCABLE
TRUST, a trust,
MICHAEL BLAKEY TRUST, a trust,
THE BLAKE REVOCABLE TRUST, a trust,
BLAKE TRUST, a trust,
ORGANICA MUSIC GROUP, LLC, a
Nevada limited liability company,
ELECTRA STAR MANAGEMENT, LLC, a
California limited liability company,
STUART A. GOLDSMITH, an individual,
EUROTECH WHEELS, LLC, a Florida
limited liability company, dba Wheel
Tech,
PYLON INTERNATIONAL, INC. a Nevada
corporation,
CHARLIE AIR, LLC, an entity of unknown
origin,
DOES 1 through 10, inclusive,

  Defendants.

Case No.

CV11-08496 MMM (PZx)

COMPLAINT FOR:

1. DAMAGES [15 U.S.C. §78 j]
2. BREACH OF CONTRACT
3. NEGLIGENT MISREPRESENTATION
4. FRAUD AND DECEIT
5. FRAUDULENT INDUCEMENT TO INVEST
6. CALIFORNIA PENAL CODE §496
7. CONSTRUCTIVE FRAUD; and
8. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

COMPLAINT  - 1 -

Plaintiffs, PETER FODOR, an individual, and BARBARA FODOR, an individual, husband and wife, CHANEL AIR LLC, a California limited liability company by their attorney, for their Complaint against Defendants MICHAEL IAN BLAKEY, aka Michael Blake, aka Lord Michael Blakey, an individual, MICHAEL BLAKEY, INC., a California corporation, THE MICHAEL BLAKEY REVOCABLE TRUST, a trust, MICHAEL BLAKEY TRUST, a trust, THE BLAKE REVOCABLE TRUST, a trust, BLAKE TRUST, a trust, ORGANICA MUSIC GROUP, LLC, a Nevada limited liability company, ELECTRA STAR MANAGEMENT, LLC, a California limited liability company, STUART A. GOLDSMITH, an individual, EUROTECH WHEELS, LLC, a Florida limited liability company, dba Wheel Tec, PYLON INTERNATIONAL, INC. a Nevada corporation, CHARLIE AIR, LLC, an entity of unknown origin, DOES 1 through 20, inclusive, (hereinafter collectively referred to as "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1. The first Claim of this action arises under the Securities and Exchange Act of June 6, 1934, Chapter 4, Stat. 881, 15 U.S.C. Section 78j and Rule 10b-5 promulgated pursuant thereto as hereinafter more fully appears.

2. The Court has jurisdiction over Plaintiffs' First Claim for relief under 28 U.S.C. Section 1331, and 15 U.S.C. Section 78aa.

3. The Court has jurisdiction over Plaintiffs' Second, Third, Fourth, Fifth, Six, and Seventh Claims for Relief under 28 U.S.C. Section 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 (b) and 15 U.S.C. Section 78aa, because all funds invested in the transaction constituting the violation occurred and originated within this District.

///
///
///
///
///

COMPLAINT - 2 -

## PARTIES

### Plaintiffs

5. Plaintiff PETER FODOR ("Peter") is an individual residing in Los Angeles County, California. He is by profession a plastic surgeon.

6. Plaintiff BARBARA FODOR ("Barbara") is an individual residing in Los Angeles County California, and the wife of Peter.

7. Plaintiff CHANEL AIR, LLC ("Chanel Air"), is a California limited liability company, of which Peter and Barbara are the sole members, and Peter the Managing Member. Plaintiffs are informed, believe and thereon allege that Chanel Air was formed by Mr. Blakey (defined below) as an investment vehicle.

### Defendants

8. Plaintiffs are informed, believe and thereon allege that Defendant MICHAEL IAN BLAKEY ("Mr. Blakey"), is an individual residing in Beverly Hills, Los Angeles County, California, and that he is also known as Michael Blake and as Lord Michael Blakey. Mr. Blakey was born in the British Isles.

9. Plaintiffs are informed, believe and thereon allege that Defendant MICHAEL BLAKEY INC. ("Blakey Inc.") is a California corporation, of which Mr. Blakey is the sole shareholder, sole director, and president and sole officer. The company is listed by the California Secretary of State a "dissolved".

10. Plaintiffs are informed, believe and thereon allege that Defendant THE MICHAEL BLAKEY REVOCABLE TRUST ("MB Revocable Trust") is a trust of which Mr. Blakey is the sole trustor, sole trustee and sole beneficiary.

11. Plaintiffs are informed, believe and thereon allege that Defendant MICHAEL BLAKEY TRUST ("Blakey Trust 1") is a trust of which Mr. Blakey is the sole trustor, sole trustee and sole beneficiary. Plaintiffs are informed, believe and thereon allege that this may be the same entity as the MB Revocable Trust.

12. Plaintiffs are informed, believe and thereon allege that Defendant THE BLAKE REVOCABLE TRUST ("Blake Trust 1") is a trust of which Mr. Blakey is the sole trustor, sole trustee and sole beneficiary. Plaintiffs are informed, believe and thereon allege that this may be the same entity as the MB Revocable Trust.

13. Plaintiffs are informed, believe and thereon allege that Defendant BLAKE TRUST ("Blake Trust 2") is a trust of which Mr. Blakey is the sole trustor, sole trustee and sole beneficiary. Plaintiffs are informed, believe and thereon allege that this may be the same entity as the MB Revocable Trust.

14. Collectively the MB Revocable Trust, Blakey Trust 1, Blake Trust 1, and Blake Trust 2, are referred to herein as the "Trusts".

15. Plaintiffs are informed, believe and thereon allege that Defendant ORGANICA MUSIC GROUP, LLC. ("Organica"), is a Nevada limited liability company with its head office located in Atlanta, Georgia, of which Mr. Blakey is the sole member, sole managing member, and sole officer.

16. Plaintiffs are informed, believe and thereon allege that Defendant ELECTRA STAR MANAGEMENT, LLC ("Electra"), is a California limited liability company with its head office located in Atlanta, Georgia, of which Mr. Blakey is the sole member, sole managing member, and sole officer. Organica and Electra have the same office address in Atlanta.

17. Collectively, Blakey Inc, Organica and Electra are referred to as the "Blakey Companies" and the Blakey Companies and the Trusts are referred to as the "Blakey Entities".

18. Plaintiffs are informed, believe and thereon allege that Defendant STUART A. GOLDSMITH ("Goldsmith") is an individual, a medical doctor, residing in Tampa, Hillsborough County, Florida.

19. Plaintiffs are informed, believe and thereon allege that Defendant EUROTECH WHEELS, LLC ("EuroTech"), is a Florida limited liability, doing business in Tampa, Hillsborough County, Florida, and uses the dba Wheel Tec. Currently,

the members of the LLC are Plaintiff Peter Fodor, and Defendant Goldsmith, with Goldsmith as the Managing Member. Plaintiffs are informed, believe and thereon allege that EuroTech was formed by Mr. Blakey as an investment vehicle.

20. Plaintiffs are informed, believe and thereon allege that Defendant PYLON INTERNATIONAL INC. ("Pylon") is a Nevada corporation, and that it was formed by Mr. Blakey as an investment vehicle. Plaintiffs are informed, believe and thereon allege that Pylon is listed as "active" by the Nevada Secretary of State, but that its authorization to do business in California, a qualification it held at one time, has been revoked.

21. Plaintiffs are informed, believe and thereon allege that Defendant CHARLIE AIR LLC ("Charlie Air") is an entity of unknown origin, and that it was formed by Mr. Blakey as an investment vehicle.

22. Collectively, Defendants EuroTech, Pylon, Charlie Air and Plaintiff Chanel Air are referred to herein as the Investment Companies.

23. Plaintiffs are ignorant of the true names and a capacity of Defendants sued herein as DOES 1 through 20, and therefore sues said Defendant DOES by such fictitious names. Plaintiffs will amend its Complaint to allege Defendant DOES' true names and capacities when the same have been ascertained. Plaintiffs are informed, believes and based thereon alleges that each of the fictitiously named Defendants is responsible in some manner for each of the wrongful acts or omissions alleged herein.

24. Plaintiffs are informed, believe and thereon allege that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things hereafter alleged, was acting within the course and scope of such agency and employment and with the permission and consent of the remaining Defendants.

///
///

COMPLAINT - 5 -

**Relevant Non-Party**

25. Don Johnson is a famous and talented Hollywood actor who became famous starring in a television series known as "Miami Vice".

**FACTS RELEVANT TO ALL CAUSES OF ACTION**

**MR. BLAKEY'S OPERATIONS AS A CON MAN**

26. In or about 2004, Mr. Blakey introduced himself to Peter and Barbara Fodor as a famous record producer, business manager for major television, movie and recording artists, and as a successful, multi-million dollar business executive with extensive experience helping his "famous clientele" to manage their money by allowing him to manage their investments. He also stated he was a British "Lord" and was recognized for his business acumen.

27. After a period of currying the favor and good graces of the Fodors, Mr. Blakey approached Peter Fodor about using Mr. Blakey's "extensive talents" in "managing money" to manage Peter and Barbara's investment portfolio, encouraging them to "allow" Mr. Blakey to share with them the same talents and financial acumen he used to make his "famous clientele" fabulously rich. Mr. Blakey described to Peter and Barbara various investments where he had successfully managed his clients' moneys to make millions of dollars. He described himself as a broker, investment advisor and business manager.

28. Mr. Blakey described that the Fodors could have faith in him because he "put his money where his mouth was". He stated that he would invest in the same projects as his clients, so that they would have confidence that the investment was of low risk, else why would Mr. Blakey risk his own money.

29. Mr. Blakey further described to the Fodors his success in forming and running companies, assuring them that they would be "passive investors" and that he would personally manage, or have members of his staff under his personal supervision manage, each investment, run each company so that all the

COMPLAINT - 6 -

Fodors had to do was to cash the checks they would receive from the investments.

30. Thereafter, over a period of years up through and including through approximately March 2011, Mr. Blakey took some $8,000,000 of the Fodor's money and invested it for them in at least, as far as is known to them, seven projects.

31. The investments described below are in no particular order.

**Investment One: Russian Diamonds**

32. Mr. Blakey claimed that he had control over several millions of dollars in diamonds and jewelry from Russia from the "regime change". He stated he obtained the loose diamonds and jewelry directly from his contacts in Russia. Mr. Blakey explained that the Fodors would be investing with him at "wholesale prices" and that on a wholesale basis the loose diamonds and jewelry were worth several times what he, Mr. Blakey, had paid for them. He explained that on a retail basis, they were worth two or three times what they were worth on a wholesale basis.

33. He explained that their role in the investment was as passive investors, that he would hold the diamonds for them, or if they chose, they could hold the diamonds themselves.

34. He further explained that at the "appropriate time" he would contact them, and sell the diamond on their behalf. He stated he was selling the loose diamonds and jewelry to them at about his costs, and that he would get paid at the sale of the diamonds when he would charge them a commission of 15-20% of the profit when he sold them for the Fodors.

35. He described the investment as being of "no risk".

36. From January 2004 through May of 2007 the Fodors made a series of 32 payments for a total of $1,251,524.00 to pay for the loose diamonds and jewelry. All payments were to Mr. Blakey, or as he personally directed.

COMPLAINT - 7 -

37. From 2004 through 2011 Mr. Blakey advised the Fodors that the time to sell had not yet arisen.

38. In May 2011 the Fodors became suspicious of Mr. Blakey's qualifications as an investment advisor and had the diamonds appraised. They appraised at $580,255, less than one-half of their purchase price.

39. At no time did Mr. Blakey furnish to the Fodors a prospectus, financial information, a business plan or other information on the diamond investment scheme.

**Investment 2: EuroTech Wheels**

40. In 2005, Mr. Blakey approached the Fodors and told them that he was going to invest in Defendant EuroTech Wheels LLC. He said he was forming the company to invest in the custom wheel manufacturing business. He offered them a role as passive investors. He said a co-investor would be a gentleman named Jeffrey M. Dean. The company was to be owned in thirds by Mr. Blakey, Dean and Fodor.

41. Over a period of time in 2005 and 2006, Mr. Blakey took $430,000 of investment capital from the Fodors for this business. Mr. Blakey had EuroTech give Peter a promissory note with a principal amount of $300,000. Mr. Blakey said he was investing $430,000 or more of his own funds in EuroTech. In 2005, Mr. Blakey announced that Mr. Dean was going to sell his shares. Mr. Blakey acting as the agent sold to Peter for $130,000 enough of Mr. Dean's shares to give Peter an additional 5% interest in the EuroTech, and sold the balance of the shares to Defendant Goldsmith.

42. All of the funds invested by the Fodors were paid to Mr. Blakey, or at his direction.

43. Later in 2008, unknown to Peter at the time, Mr. Blakey sold his 1/3 interest to Goldsmith for $60,000. This was handled in a surreptitious manner by Mr. Blakey and Goldsmith in derogation of Peter's rights under the LLC member

1 | agreement. That agreement required that any member selling his interest give full
2 | disclosure and opportunity to buy at the same price to the other members.
3 |     44.    At no time prior to the investment did Blakey give to the Fodors a
4 | prospectus, financial disclosures, business plan or the like. Further, there were
5 | never any meetings of members or managing members.
6 |     45.    Plaintiffs are informed, believe and thereon allege, that Mr. Blakey
7 | did not invest any money in EuroTech, but instead used funds belonging to the
8 | Fodors as Mr. Blakey's capital contribution to the company.
9 |     46.    The Fodors have never been paid anything for their investment, not a
10 | share of profits, not a payment on the note, or anything else.
11 |     47.    Subsequent to Mr. Blakey's sale of his interest to Dr. Goldsmith, Dr.
12 | Goldsmith has had his sons run the business, but he has continued in Mr. Blakey's
13 | path of not holding annual meetings of members or managing members, not
14 | providing any financial information, not paying anything to the Fodors.
15 |     48.    The Fodors did not discover that Mr. Blakey had abandoned the
16 | business and sold out his interest until 2009 or 2010.

### Investment 3: Don Johnson Record Deal

18 |     49.    In 2006, Mr. Blakey approached Peter and said that his "friend" Don
19 | Johnson wanted to do a record, that Don was a wonderful singer, and he invited
20 | Peter to invest in producing the album $50,000, stating he, Mr. Blakey would put
21 | up the other $50,000. He stated that the terms of the investment was that he,
22 | Mr. Blakey would produce the album, Mr. Johnson would be the artist, and that
23 | from the proceeds Mr. Johnson would receive 50%, and that Peter and Mr. Blakey
24 | would each receive 25% of the profits.
25 |     50.    He stated it would probably take several months to produce the
26 | album, but that it should hit the retail market in 2007 or 2008.

COMPLAINT - 9 -

51.  He said that this investment was a project of Organica and Electra, and that Organica and Electra were involved with the artist in the production of the record.

52.  Peter invested $50,000 on June 26, 2006. The funds were paid to Mr. Blakey, or at his direction.

53.  After several months without hearing about the album, Peter asked Mr. Blakey the status of the project. Mr. Blakey kept giving excuses for the delay in production. As late as 2010 Mr. Blakey was still offering excuses for the album not being finished, such as Mr. Johnson being busy with new projects.

54.  The Fodors have received nothing for their investment and further allege that Mr. Blakey did not put up his promised $50,000 in the project.

**Investment 4: Pylon International Inc.**

55.  In 2006, Mr. Blakey approached Peter regarding passively investing in an aircraft leasing company. He stated that he and two other gentlemen were going to invest in it, inviting Peter to become the fourth investor. Mr. Blakey stated the purpose of the company was to rent business jets that he and Peter were buying. The aircraft purchase transactions are described in Investments 5 and 6, below.

56.  Again, Mr. Blakey represented that the investment was safe because he, Mr. Blakey, was investing the same amount of money that he asked for Peter to invest.

57.  The Fodors invested $149,960 in 2006 and 2007.

58.  At no time were the Fodors given any prospectus, investment circular, business plan, or financial information or projections regarding the investment.

59.  The Fodors never received any money for their investment.

60.  The Fodor never received any proof of their investment.

COMPLAINT  - 10 -

61. The investment funds were paid to Mr. Blakey, or at his direction.

### Investment 5: Charlie Air LLC

62. In 2007, Mr. Blakey formed Charlie Air LLC as an investment vehicle. It was to be a business jet leasing company. He was to be the active participant and business manager and the Fodors passive investors.

63. Mr. Blakey described the investment as that both he and the Fodors would each invest $2,000,000 into the company, and the company would buy two business jets, registration numbers N150CA and N360CA.

64. Mr. Blakey said the planes cost approximately $1.9 million each, and the approximately $100,000 extra each was to be used to cover setting up the business. The Fodors paid their invested moneys to Mr. Blakey, or as he directed.

65. At no time were the Fodors given any prospectus, business plan, financial statement, financial projections, or other information regarding the risks or qualifications of the investment.

66. Mr. Blakey bought the two jets.

67. Sometime later, Goldsmith bought into Charlie Air for approximately $1,300,000. Mr. Blakey gave to Peter $500,000. It appears that Mr. Blakey kept $800,000 of this.

68. The Fodors were never paid any other funds for their investment.

69. Plaintiffs are informed, believe and thereon allege that Mr. Blakey never invested any of his own moneys in this transaction, but rather used the Fodor's moneys to grubstake himself.

70. The business proved unsuccessful and in October 2007 Mr. Blakey assigned his interest in Charlie Air to Peter Fodor. The assignment was drafted by Mr. Blakey's lawyer and included a release. The Fodors were not represented by a lawyer. Mr. Blakey told them the agreement was simple and that he advised them not to get an attorney involved. Not knowing at the time that the aircraft had

been purchased for only $1,000,000 each, the Fodors signed the agreement without the advice of counsel. Plaintiffs are informed, believe and thereon allege that the assignment was obtained under duress in an unfair manner without proper warnings that they should seek their own independent legal counsel, and that as such, the assignment was obtained in bad faith and that for these reasons, the release is ineffective.

71. In 2011 the Fodors because suspicious of Mr. Blakey's qualifications and a fund raiser and investment advisor and they researched the airplanes. They discovered that Mr. Blakey had bought the two aircraft for approximately $1,000,000 each, not the $1,900,000 each purchase price that he stated.

**Investment 6: Chanel Air**

72. This investment was similar to Investment 5, Charlie Air. Except that the aircraft was much larger and more expensive.

73. Again, Mr. Blakey represented that he advised the Fodors to invest $4,000,000 in the purchase of a Canadair Cl-600 Challenger jet, tail number N310PE and re-registered as N604AC. Mr. Blakey stated he would invest the other $4,000,000 to purchase the jet.

74. Mr. Blakey said the jet cost $8,000,000.

75. The Fodors paid $4,000,000 to Mr. Blakey, or at his direction.

76. Once again, at no time were the Fodors given any prospectus, business plan, financial statement, financial projections, or other information regarding the risks or qualifications of the investment.

77. Mr. Blakey bought the jet.

78. This business also proved unsuccessful and in October 2007 Mr. Blakey assigned his interest in Chanel Air to Peter Fodor. The assignment was drafted by Mr. Blakey's lawyer and included a release. The Fodors were not represented by a lawyer. Mr. Blakey told them the agreement was simple and

that he advised them not to get an attorney involved. Not knowing at the time that the aircraft had been purchased for only $1,000,000 each, the Fodors signed the agreement without the advice of counsel. Plaintiffs are informed, believe and thereon allege that the assignment was obtained under duress in an unfair manner without proper warnings that they should seek their own independent legal counsel, and that as such, the assignment was obtained in bad faith and that for these reasons, the release is ineffective.

79. Plaintiffs are informed, believe and thereon allege that Mr. Blakey never invested any of his own moneys in this transaction, but rather used the Fodor's moneys to grubstake himself.

80. In 2011 the Fodors because suspicious of Mr. Blakey's qualifications and a fund raiser and investment advisor and they researched the airplanes. They discovered that Mr. Blakey had bought the aircraft for approximately $3,405,000, not the $8,000,000 purchase price that he stated.

### Investment 7: Investment Grade Watches

81. From 2006 – 2010, Mr. Blakey sold 7-10 investment grade watches to Peter. Peter is a collector of and investor in expensive watches.

82. Mr. Blakey represented he was selling them to Peter as a friend for their "wholesale value" and that they were worth much more than that.

83. This was the only investment in which Mr. Blakey did NOT state he was co-investing with Peter an amount equal to Peter's investment.

84. In 2011, Peter discovered that the watches were not authentic, that bits and pieces of investment grade watches had been taken and put on ordinary watches to make them to appear to be investment grade, and that none of them were genuine investment grade watches.

### Common to All Investments

COMPLAINT - 13 -

85. As to each investment, except Investment 7, Mr. Blakey stated he was an investment advisor, broker and fund raiser that would actively manage the investments, and that he was putting in his own money, in an amount at least equal to the Fodors.

86. As to each investment, the role of the Fodors was that of a passive investor at the time the investment was made, as described by Mr. Blakey.

87. For all of the investments, the funds were paid to Mr. Blakey himself, one of the Trusts, or the person directed by Mr. Blakey. Usually payments were to Mr. Blakey or one of his trusts.

88. For all of the investments, no prospectus, financial information, business plan, investor qualification application, financial information was ever given.

89. The companies in which the Fodors invested, Organica, Electra, EuroTech, Pylon, Charlie Air and Chanel Air, are referred to herein as the "Investment Companies", and the investments, 1-7, described above are referred to collectively as the "Investments".

90. Plaintiffs are informed, believe and thereon allege, that Mr. Blakey took hundreds of thousands of dollars from the Fodors and used it to purchase his house located at 1680 Summitridge Drive, Beverly Hills, CA. The home was purchased for $2,360,000, had a mortgage at the time of purchase of $1,450,000 and that Mr. Blakey had made a down payment of approximately $900,000 from the funds he took from the Fodors for Pylon and/or Chanel Air and/or Charlie Air.

///
///
///
///
///
///

**FIRST CAUSE OF ACTION**

**(For Damages Under 15 U.S.C. § 78 j)**

(against MICHAEL IAN BLAKEY, aka Michael Blake, aka Lord Michael Blakey, an individual, MICHAEL BLAKEY, INC., a California corporation, THE MICHAEL BLAKEY REVOCABLE TRUST, a trust, MICHAEL BLAKEY TRUST, a trust, THE BLAKE REVOCABLE TRUST, a trust, MICHAEL BLAKEY TRUST, a trust, THE BLAKE REVOCABLE TRUST, a trust, BLAKE TRUST, a trust, ORGANICA MUSIC GROUP, LLC, a Nevada limited liability company, ELECTRA STAR MANAGEMENT, LLC, a California limited liability company, EUROTECH WHEELS, LLC, a Florida limited liability company, dba Wheel Tec, PYLON INTERNATIONAL, INC. a Nevada corporation, CHARLIE AIR, LLC, an entity of unknown origin, DOES 1 through 20, inclusive)

91. Plaintiffs reallege and reassert paragraphs 1 through 90 of the Complaint as though fully set forth herein.

92. Plaintiffs are informed, believe and thereon allege that at all times material hereto, Defendants Mr. Blakey, the Blakey Companies, and the Trusts, and DOES 1 through 10, inclusive, own, control and operated the Blakey Entity defendants for investment development in the United States and elsewhere.

93. At all times material hereto, said Defendants, in person or through their employees and/or agents, communicated to the Plaintiffs certain representations through the use of the United States Mail, Interstate emails, and Interstate Telephone in Interstate Commerce, and said representations were made to induce and consummate certain unlawful representations and schemes and business fraud on Plaintiff.

94. Over the course of the years from 2004 to the present, as part of a scheme to induce Plaintiffs to make the Investments, Mr. Blakey in person and/or through his employees or agents, contacted Plaintiffs on many occasions in order to induce Plaintiffs to purchase, by exchanging their money for shares and

interests in the Investments, including free trading stock (or membership interests in the case of an LLC) in the Investment Companies (except Organica and Electra), and in so doing made many false promises, misrepresentations and untruthful statements, including but not limited to the following:

  a. That Mr. Blakey had extensive experience and had great success in making profits through managing funds for wealthy investor and television and movie stars and recording artists;

  b. That in each Investment, except Investment 7, that the Fodors could be sure that their investment was safe and not risky because he, Mr. Blakey, was putting at least as much money in the deal as he was taking from them;

  c. Repeated guarantees at first that each Investment was performing as planned;

  d. Repeated guarantees that the Defendants would pay Plaintiffs money and give Plaintiffs stock (or membership interest) in the Investment Companies as previously alleged.

  e. Mr. Blakey represented that the shares (membership interests in the case of LLCs) were freely transferable and sellable by the Fodors to anyone at any time, so that their investment was safe and liquid.

95. Mr. Blakey also failed to qualify the Fodors as investors, and failed to furnish to them any pre-investment prospectus, business plan, financial information, disclosures, risk analysis, or the like, in contravention of SEC laws, rules and regulations, prior to taking their money.

96. These representations of Mr. Blakey, and the representations set forth in the written materials he provided, were untrue and/or contained only falsehoods, half-truths and/or material omissions of the facts.

97. These representations were made to Plaintiffs by Mr. Blakey and their agents with the intention that Plaintiffs should rely thereon in making their investments.

98. The failures to provide the disclosures required by SEC law, rule and regulation was undertaken in order to keep the Plaintiffs from learning of the risks inherent in the Investments, with the intention that the Plaintiffs should invest in ignorance.

99. Mr. Blakey, the Blakey Companies and their affiliates knew that these representations, both oral and written, were untrue and were recklessly made with a wanton disregard for the truth, and that they had failed to make material disclosures as required by applicable laws, rules and regulations.

100. Material facts were withheld from Plaintiffs by Mr. Blakey. These facts were detrimental to investments in the seven Investments, all of which facts were known to Defendants, or were reasonably within Defendants' discovery.

101. Mr. Blakey failed to disclose pertinent facts for the purpose and intent of deceiving Plaintiffs, and for inducing Plaintiffs to enter into the numerous Investments.

102. As a result of representations by Defendant, based upon Plaintiffs' reliance upon Mr. Blakey, and the Blakey Companies' oral representations and representations in the written materials.

103. Plaintiffs are informed, believes and based thereon alleges that the Defendants, and each of them, failed and neglected to register or claim as exempt from registration, the sale of stock (or membership interests in the case of LLCs) to Plaintiffs and other investors, with the Securities and Exchange Commission of the United States of America, or with any similar state securities regulation commission.

104. Plaintiffs are informed, believe and thereon allege that the Blakey Entity defendants, Mr. Blakey and the Blakey Entities, are entities through which

Mr. Blakey has concealed assets belonging to Plaintiffs, and that Mr. Blakey uses these entities to confuse the tracing of assets by Plaintiffs and others. Plaintiffs sue these entities as the converters of Plaintiffs' assets, and as aiders, abettors and co-conspirators in his scheme of converting and hiding Plaintiff's assets.

105. As a result of the matters hereinbefore alleged, Plaintiffs have been damages in excess of $8,000,000.00 in terms of investments made, but in excess of $16,000,000 based upon the represented fair market value of the Investments. However, the exact amount is unknown to Plaintiffs at this time and Plaintiffs will ask leave of court to amend this pleading when same has been determined.

## SECOND CAUSE OF ACTION
### (For Breach of Contract against All Defendants)

106. Plaintiffs reallege and reassert paragraphs 1 through 105 of the Complaint as though fully set forth herein.

107. Plaintiffs are informed, believe and thereon allege that Defendants have knowingly made false promises to pay Plaintiffs and have tendered a series of unsellable stock certificates, membership interests, promissory notes, and the like, as alleged above.

108. To date, Plaintiffs have received no asset of value pursuant to the terms of the investments except, (1) the Russian Diamond valued at less than ½ of the investment value, and (2) the three aircraft which have been sold at very greatly reduced prices in order to recoup and mitigate the losses in Investments 4, 5 and 6.

109. Further, the Defendants have failed to make financial disclosures, hold annual meetings, observe corporate and LLC legal formalities, make reports to members and/or shareholders, all in derogation of both statutorily imposed duties, and specific contractual duties assumed by the Defendants.

110. Plaintiffs have been bilked of some $8,000,000 in cash, and if the stock values promised by Mr. Blakey and Goldsmith (as to Goldsmith, as to EuroTech and Charlie Air only) had were as represented, more than $16,000,000.00.

111. The acts of Defendants constitute a breach and a material failure of the consideration of the Investments, notwithstanding Plaintiffs' performance in good faith in performing services for the Defendants.

112. As a result of the breach of contracts by the Defendants, Plaintiffs have been forced to file this action to recover in excess of $16,000,000 in investment loses and costs.

113. Plaintiffs are informed, believe and thereon allege that the Blakey Entity defendants are entities through which Mr. Blakey has concealed assets belonging to Plaintiffs, and that Mr. Blakey uses these entities to confuse the tracing of assets by Plaintiffs and others. Plaintiffs sue these entities as the converters of Plaintiffs' assets, and as aiders, abettors and co-conspirators of Mr. Blakey in his scheme of converting and hiding Plaintiffs' assets.

114. On this cause of action, Plaintiffs seek recovery against Goldsmith only for related to his acts in regards to Charlie Air and EuroTech, and not for the other acts of Mr. Blakey and the Blakey Entities.

**THIRD CAUSE OF ACTION**
**(For Negligent Misrepresentation against All Defendants)**

115. Plaintiffs reallege and reassert paragraphs 1 through 114 of the Complaint as though fully set forth herein.

116. At the time Defendants made the representations to Plaintiffs as hereinabove described, they had no reasonable ground for believing them to be true. The aforementioned representations were made by Defendants in a reckless and negligent manner not warranted by the information that Defendants then