E-FILED 02.21.12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PETER FODOR; BARBARA FODOR and CHANEL AIR LLC,

          Plaintiffs,

      vs.

MICHAEL IAN BLAKEY; MICHAEL BLAKEY REVOCABLE TRUST; ORGANICA MUSIC GROUP, LLC; ELECTRA STAR MANGEMENT, LLC; STUART GOLDSMITH; EUROTECH WHEELS LLC; PYLON INTERNATIONAL, INC.; CHARLIE AIR LLC, et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 11-08496 MMM (RZx)

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

On October 13, 2011, plaintiffs Peter and Barbara Fodor and Chanel Air, LLC filed this action against Michael Ian Blakey, Michael Blakey, Inc., Michael Blakey, Revocable Trust, the Michael Blakey Trust, the Blake Revocable Trust, the Blake Trust, Organica Music Group, LLC, and Electra Star Management.[1] On November 30, 2011, defendants filed motions to dismiss and for a more definite statement under Rules 12(b)(6) and 12(e) of the Federal Rules of Civil

---

[1]Complaint, Docket No. 1 (Oct. 13, 2011). The complaint also pleads claims against Pylon International, Eurotech Wheels, Charlie Air, and Dr. Stuart Goldsmith, but Blakey, the Blakey entities, Organica Music Group, and Electra Star seek to dismiss only claims pled against them.

Procedure.[2]  Plaintiffs oppose the motions.[3]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds that this matter is appropriate for decision without oral argument.  The motion hearing scheduled for February 27, 2012, is hereby vacated and the matter is taken off calendar.

## I.  FACTUAL BACKGROUND

Plaintiffs allege that in or about 2004, Michael Ian Blakey introduced himself to the Fodors as a famous record producer and business manager with extensive experience helping his "famous clientele" manage their money and investments.[4]  He purportedly said that he was a "British 'Lord'" and was widely recognized for his business acumen.[5]  Blakey allegedly approached the Fodors about using his "extensive talents" to manage their investment portfolio.  He described various investment schemes he had used to make millions of dollars for his clients and touted his skill as a broker, investment advisor, and business manager.[6]

Blakey assured the Fodors they could have faith in him because he "put his money where his mouth was" by making the same investments as his clients.[7]  He told the Fodors he had expertise in forming and running companies, that they would be "passive investors" in these companies, and that he would handle the day-to-day business of managing their investments.[8]

---

[2]Motion to Dismiss Complaint and Motion for More Definite Statement ("MTD"), Docket No. 3 (Nov. 30, 2011). See also Reply in Support of Motion to Dismiss and More Definite Statement ("Reply"), Docket No. 7 (Feb. 13, 2012).

[3]Brief in Opposition to Defendants Michael Blakey Motion to Dismiss Third Complaint ("Opp."), Docket No. 6 (Feb. 6, 2012).

[4]Complaint, ¶ 16.

[5]*Id.*

[6]*Id.*, ¶ 27.

[7]*Id.*, ¶ 28.

[8]*Id.*, ¶ 29.

2

Over a period of years through and including March 2011, the Fodors gave Blakey approximately $8 million to invest in seven different projects.[9]

The first project involved the purchase at wholesale of diamonds and jewelry from Russia. Blakey told the Fodors he would resell the items for two to three times their wholesale value.[10] He described the scheme as "no risk," and said he would charge a commission of 15-20% when the diamonds were actually sold.[11]  From January 2004 to May 2007, the Fodors made thirty-two payments totaling approximately $1.25 million for the diamonds and jewelry; all payments went directly to Blakey or were sent to others at his direction.[12]  Throughout the period from 2004 to 2011, Blakey advised the Fodors that "the time to sell had not yet arisen."[13]  In May 2011, the Fodors became suspicious of Blakey's claims and had the diamonds appraised.  They discovered that the diamonds were worth only $580,000, less than half their purchase price.[14]

In 2005, Blakey told the Fodors he was going to invest in EuroTech Wheels LLC, a company he was forming to engage in the custom wheel manufacturing business.[15]  The company was to be owned in equal shares by Blakey, Peter Fodor, and a man named Jeffrey M. Dean.[16] During 2005 and 2006, Blakey accepted $430,000 in investment capital from the Fodors for the business; he represented that he was going to invest a similar amount or more.[17]  EuroTech issued

---

[9]*Id.*, ¶ 30.  The Fodors imply that Blakey invested their money in other schemes as well, but describe only seven projects in the complaint.

[10]*Id.*, ¶¶ 32-33.

[11]*Id.*, ¶¶ 34-35.

[12]*Id.*, ¶ 36.

[13]*Id.*, ¶ 37.

[14]*Id.*, ¶ 38.

[15]*Id.*, ¶ 40.

[16]*Id.*

[17]*Id.*, ¶ 41.

a promissory note to Peter Fodor in the amount of $300,000.[18]  In 2005, Blakey announced that Dean was going to sell his shares, and induced Peter Fodor to purchase an additional 5% interest in the company.  The balance of the shares were transferred to defendant Goldsmith.[19]  Unknown to plaintiffs, in 2008 Blakey sold his interest in the company to Goldsmith for $60,000, in a "surreptitious manner . . .[and] in derogation of Peter[ Fodor]'s rights under the LLC [ ]agreement," which required [that] any member selling his interest give an opportunity to the other members to buy at the same price."[20]  Plaintiffs allege on information and belief that in fact, Blakey never invested money in EuroTech, but instead used funds belonging to the Fodors as his capital contribution.[21]  The Fodors have never been paid for their investment and have received no payment on the promissory note.[22]  Goldsmith has allegedly transferred management of the company to his sons.  He purportedly does not hold member meetings and does not provide financial information to the Fodors.[23]  The Fodors assert that they did not discover Blakey had abandoned the business until 2009 or 2010.[24]

In 2006, Blakey invited Peter Fodor to invest in the production of a record by his "friend" Don Johnson.  Blakey asked Fodor to invest $50,000 and said he would put up an equal amount.[25] Blakey reported that he would produce the album, and that Johnson would be the artist; Johnson was to receive 50% of the profits, while Fodor and Blakey were each to receive 25%.[26]  Blakey

---

[18]*Id.*

[19]*Id.*

[20]*Id.*, ¶ 43.

[21]*Id.*, ¶ 45.

[22]*Id.*, ¶ 46.

[23]*Id.*, ¶ 47.

[24]*Id.*, ¶ 48.

[25]*Id.*, ¶ 49.

[26]*Id.*

represented that the album would "hit the retail market in 2007 or 2008."[27]  He said that the record was a joint project of Organica and Electra, which were "involved with" Johnson in its production.[28]  The project never came to fruition; Blakey offered various excuses for the production delay as late as 2010.  The Fodors assert that they have received no return on their investment in the record production project.[29]

In 2006, Blakey approached Peter Fodor about investing in an aircraft leasing company with two other individuals.[30]  The Fodors invested approximately $150,000 in the company in 2006 and 2007.[31]  Similarly, in 2006 Blakey formed Charlie Air LLC and Chanel Air, two additional business jet leasing companies.[32]  Blakey suggested that he and the Fodors each invest $2 million to purchase two business jets for Charlie Air and $4 million to purchase a Challenger jet for Chanel Air.[33]  Although the jets were purchased,[34] the businesses proved unsuccessful.  In October 2007, Blakey assigned his interest in two companies to Peter Fodor.[35]  Blakey's lawyer drafted the assignment contracts, and Blakey told the Fodors that the agreements would be simple and would not require their attorney's review.[36]  What the Fodors allegedly did not know at the

---

[27]*Id.*, ¶ 50.

[28]*Id.*, ¶ 51.

[29]*Id.*, ¶¶ 52-53.

[30]*Id.*, ¶¶ 55-56.

[31]*Id.*, ¶ 57.

[32]*Id.*, ¶¶ 62, 74.

[33]*Id.*, ¶¶ 64, 73.

[34]*Id.*, ¶¶ 66, 77.  The complaint alleges that Goldsmith purchased a stake in Charlie Air for approximately $1.3 million; Blakey purportedly gave Peter Fodor $500,000 of this amount.  Plaintiffs allege "[i]t appears that [ ]Blakey kept $800,000" for himself.  (*Id.*, ¶ 67.)

[35]*Id.*, ¶¶ 69, 78.

[36]*Id.*, ¶¶ 70, 78.

time was that the Charlie Air aircraft had been purchased for $1 million each and that the Chanel Air aircraft had been purchased for $3.4 million; these prices were less than half the purchase prices Blakey originally quoted. The Fodors allege that they discovered Blakey's deception only in 2011 after becoming suspicious about his qualifications.[37] The Fodors were never paid any funds from these investments, and they allege on information and belief that Blakey never invested any of his own money in the companies, instead using the Fodors' funds to "grubstake himself."[38]

Blakey's final "investment" scheme involved the sale of seven to ten "investment grade watches" to Peter Fodor, who is a collector of expensive watches.[39] Blakey represented that he was selling the watches to Fodor at wholesale value because Fodor was a friend, and that in fact the watches were worth much more.[40] Plaintiffs allege that Fodor discovered in 2011 that the watches were not authentic and that components of investment grade watches had been integrated into ordinary watches to make them appear of greater value.[41]

The complaint alleges that Blakey never furnished the Fodors with prospectuses, financial information, or business plans regarding any of the investment schemes.[42] All of the monies the Fodors invested were purportedly paid to Blakey directly, to trusts in his name, or to individuals whom he identified.[43] Plaintiffs allege on information and belief that Blakey used approximately $900,000 of the funds he obtained from them for investment projects to purchase a $2.36 million home, which he encumbered with $1.45 million mortgage.[44]

---

[37] *Id.*

[38] *Id.*, ¶ 69, 79.

[39] *Id.*, ¶ 81.

[40] *Id.*, ¶ 82.

[41] *Id.*, ¶ 84.

[42] *Id.*, ¶¶ 39, 44, 65, 88.

[43] *Id.*, ¶ 87.

[44] *Id.*, ¶ 90.

The complaint pleads claims for violation of U.S.C. § 78j, breach of contract, fraudulent and negligent misrepresentation, fraudulent inducement to invest, violation of California Penal Code § 496, constructive fraud, and declaratory relief.

## II. DISCUSSION

### A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)). Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual

content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

As the Ninth Circuit has explained, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.      Whether Plaintiffs Have Stated Claims for Negligent Misrepresentation, Fraud, Fraudulent Inducement, and Constructive Fraud**

**1.      Legal Standard Governing Claims Sounding in Fraud**

Under Rule 8(a)(2), a pleading need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." The more rigorous Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.PROC. 9(b); see also 5A Charles A. Wright & Arthur W. Miller, FEDERAL PRACTICE AND PROCEDURE § 1297 (2006) ("[Rule 9(b)] is a special pleading requirement [that is] contrary to the general approach of the 'short and plain,' simplified pleading adopted by the federal rule. . .").

"To avoid dismissal for inadequacy under Rule 9(b)," a "complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989) and *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)); see also *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal.1996). Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity. See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d

531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' 'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong,'" citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004), and *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted));; *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, *6 (N.D. Cal. July 13, 2011) (explaining that "[f]raud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written" (citations omitted)).

### 2.    Application to Plaintiffs' Complaint

Plaintiffs' fourth and fifth claims for "fraud and deceit" and "fraudulent inducement to invest" plead the same basic claim, and the court addresses them in tandem for that reason.[45]

---

[45]In their opposition, plaintiffs assert that their second through eighth claims, which allege various common law tort claims and a claim based on the California Penal Code, arise under the Securities Act of 1933, 15 U.S.C. § 77a, et seq. (Opp. at 3-4.) None of the allegations found in the causes of action support this assertion, however. The second through eighth causes of action do not mention the federal securities laws, much less reference the 1933 Act. To the extent plaintiffs intended to assert federal securities law claims in the second through eighth causes of

These claims are subject to Rule 9(b). Plaintiffs' negligent misrepresentation claim also sounds in fraud, and is therefore subject to Rule 9(b)'s heightened pleading standards. See *Vang Chanthavong v. Aurora Loan Services, Inc.*, 448 B.R. 789, 800 (E.D. Cal. 2011) ("The same 9(b) heightened pleading requirement applies to Plaintiff's negligent misrepresentation claim since his claim is 'grounded in fraud' (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 9th Cir. 2003)); *Wolph v. Acer America Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, *5

action, the counts must be dismissed under Rule 8 because they fail utterly to give defendants notice of such claims. See *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (a complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed for failure to satisfy Rule 8, quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *Ketchmark v. United States*, No. 09-00540 JMS/BMK, 2009 WL 4797475, *2–6 (D. Haw. Dec. 11, 2009) (dismissing *sua sponte* under Rule 8 where plaintiff's claims failed clearly to identify the defendants against which they were asserted, the legal basis for the claims, and the facts that supported the claims); *Grid Systems Corp. v. Texas Instruments Inc.*, 771 F.Supp. 1033, 1037 (N.D. Cal. 1991) ("Effective notice pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer").

Plaintiffs contend the claims are based on the securities laws because they apparently misunderstand defendants' motion. The complaint's first cause of action *does* plead a claim under the federal securities laws. As discussed *infra*, such claims are subject to a heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs argue that the PSLRA applies only to claims based on the Securities Act of 1934, and therefore that claims based on the *1933* Act are not subject to the statute's rigorous pleading requirements. They seek to avoid that pleading standard by asserting that their second through eighth causes of action arise under a different securities statute.

As an initial matter, not all provisions of the 1933 Act guarantee a private right of action. See, e.g., *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1353-54 (9th Cir. 1987) (holding that Section 17(a) of 1933 Act does not provide a private right of action). Even if plaintiffs could assert claims under the 1933 Act, however, their argument ignores defendants' basis for seeking dismissal and the actual claims pled. Defendants do *not* assert that the PSLRA applies to plaintiffs' second through eighth causes of action because as pled, those claims arise solely under state law. While defendants correctly contend that Rule 9(b) applies to claims sounding in fraud, they do not, and cannot, claim that the PSLRA applies to such claims.

In reply to plaintiffs' argument that they have pled claims under the 1933 Act, defendants advance various arguments as to why plaintiffs are barred from asserting claims under that statute. As it is not even clear that plaintiffs intend to plead such claims, the court declines to address their arguments. Insofar as plaintiffs intend to assert claims under the 1933 Act, however, the court dismisses those claims as insufficiently pled under Rule 8.

(N.D.Cal. Sept. 14, 2009) ("[I]n the Ninth Circuit, negligent misrepresentation claims are subject to heightened pleading requirements under Rule 9(b)"); *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements").

The same is true of plaintiffs' claims for constructive fraud. *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1021(N.D. Cal. 2007) ("[F]acts supporting a claim for constructive fraud must be alleged with particularity under Rule 9(b)"); *In re Verisign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1219 (N.D. Cal. 2007) (holding that a constructive fraud claim "must be pled with particularity"); *Munday v. Real Estate Advisors, Inc.*, No. C-95-20143-JW, 1995 WL 549015, *2 (N.D. Cal. Sept. 12, 1995) ("Plaintiffs' claim is not for negligence, but for constructive fraud. Plaintiffs must therefore satisfy Fed. R. Civ. P. 9(b) and plead the necessary elements for constructive fraud: the existence of a fiduciary relationship, nondisclosure of a material fact, reliance and damages"). As a result, plaintiffs' claims for negligent misrepresentation, fraud and deceit, fraudulent inducement and constructive fraud are all subject to the requirements of Rule 9(b).

Although plaintiffs have alleged some specific facts suggesting that they have a viable fraud claim, they have failed to meet Rule 9(b)'s rigorous requirements. "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quotations and citations omitted). As a result, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d at 1548. Here, while plaintiffs plead the general contours of Blakey's allegedly fraudulent schemes and state with some specificity the numerous transactions and interactions they had with him, the complaint fails to identify the reasons why Blakey's statements were false or misleading. For example, the complaint contains a section common to all causes of action titled "Mr. Blakey's

11

Operations as a Con Man."[46]  This section alleges that Blakey made a range of representations about his investment advising experience and the depth of his connections and contacts, implying that these statements were misleading.  The complaint, however, does not identify why the statements were false, or plead any facts suggesting that Blakey knew they were misleading at the time he made them.

The allegations regarding each of the investment schemes are somewhat more specific, but ultimately have similar defects.  Plaintiffs allege, for example, that Blakey told the Fodors he would be able to purchase diamonds and jewelry at a reduced price, which would retail for two or three times its wholesale value.  Blakey also purportedly stated that he would sell the jewelry and diamonds at an "appropriate time" and that the investment was "no risk."[47]  Relying on these representations, the Fodors assert they paid approximately $1.25 million for the diamonds.  They contend that Blakey advised them for seven years that it was not yet time to sell.  Finally, they assert that in May 2011, the diamonds were appraised at approximately $600,000, "less than one-half their purchase price."[48]  Drawing all reasonable inferences in plaintiffs' favor, these allegations imply that Blakey intended to defraud the Fodors when soliciting the original investment.  Nonetheless, the facts currently pled show only that the Fodors invested a large sum of money in what they believed would be a good investment.  While it is evident that the investment turned sour and will not likely produce the return they expected, more facts are required to plead a viable fraud claim.  There are no allegations as to when Blakey made the allegedly fraudulent statements, the content of the statements, and why the representations were false or misleading at the time they were made.  These deficiencies, particularly the last one, are fatal to plaintiffs' claim.

The allegations regarding the "Don Johnson record deal" are especially conclusory and plead almost no demonstrably false or inaccurate factual representations.  Instead, they state

---

[46]Complaint at 6.

[47]*Id.*, ¶¶ 34-35.

[48]*Id.*, ¶ 38.

vaguely that "Blakey kept giving excuses for the delay in production," and that he continued to "offer[] excuses."[49]  The complaint does not allege Blakey's purported representations with any specificity, does not identify which representations, if any, were incorrect or fraudulent, and does not state why the representations were false.[50]

Plaintiffs' allegations regarding the jet leasing investment schemes fare better, as they plead explicitly that Blakey lied about the purchase price of the airplanes.[51]  Rule 9(b), however, demands that plaintiffs plead "the circumstances of the alleged fraud with sufficient particularity." *Sonoma Foods, Inc.*, 634 F.Supp.2d at 1022.  This requires allegations as to when Blakey made the alleged representations, the specific content of the representations, to whom the representations were made, and the reasons they were false.  Although plaintiffs assert that Blakey purchased the planes for a different price than he quoted to the Fodors – presumably to convey that his representations were false – more is required, since the price could have varied for a number of reasons, not all of which would demonstrate that Blakey fraudulently induced plaintiffs to make the investment.  *Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," quoting *Cooper*, 137 F.3d at 627).  Additionally, plaintiffs' allegations concerning the timing of Blakey's purported misrepresentations are vague and uncertain, and there are no specific allegations concerning to the circumstances under which the representations were made.  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D. Cal. 1999) (stating that "allegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b)").  Finally, the content of the misrepresentations is pled in fairly conclusory

---

[49]*Id.*, ¶ 53.

[50]The allegations regarding the "investment grade watches," which state only that Blakey represented that the watches "were worth much more than" their wholesale value, are similarly vague.  (*Id.*, ¶ 82.)

[51]See, e.g., *id.*, ¶ 64 ("Blakey said the planes cost approximately $1.9 million each"); *id.*, ¶ 71 (stating that plaintiffs "discovered that Blakey had bought the two aircraft for approximately $1,000,000 each").

fashion; plaintiffs allege only that Blakey quoted the price of the planes; there is no description of his specific statements or the context in which they were made. Consequently, plaintiffs' claims for negligent misrepresentation, fraud and deceit, fraudulent inducement and constructive fraud must be dismissed.[52]

---

[52]The fraud claims include allegations on information and belief that "the Blakey Entity defendants are entities through which Mr. Blakey has concealed assets belonging to Plaintiffs, and that Mr. Blakey uses these entities to confuse the tracing of assets by Plaintiffs and others. Plaintiffs sue these entities as the converters of Plaintiffs' assets, and as aiders, abettors, and co-conspirators of Mr. Blakey in his scheme of converting and hiding Plaintiffs' assets." (Complaint, ¶¶ 113, 118, 132, 139, 149, 158.)

Plaintiffs appear to assert both that the "Blakey entities" are directly liable as "converters" of their assets, and vicariously liable as Blakey's aiders, abettors, and co-conspirators. Plaintiffs' theory of direct liability fails, as their allegations regarding conversion sound in fraud and must be pled with particularity. The claim is deficient not only for the reasons articulated above, but also because plaintiffs' fraud allegations focus exclusively on Blakey's fraudulent representations, and do not address the steps the entities took to convert and conceal the assets. A fraud claim must specify "'the *who*, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627 (emphasis added)). Plaintiffs do not address the Blakey entities' role in the purportedly fraudulent scheme.

Additionally, because plaintiffs have failed to plead their fraud claims against Blakey with the requisite particularity, any claim that the Blakey entities are vicariously liable for his conduct fails as well. *Jercich v. County of Merced*, No. 1:06-CV-00232-OWW-DLB, 2006 WL 3747184, *14 (E.D. Cal. Dec. 19, 2006) ("If a plaintiff fails to plead the underlying claim, the corresponding conspiracy claim must also fail"); see also *Mejia v. EMC Mortg. Corp.*, No. CV 09–4701 CAS (CFEx), 2012 WL 367364, *7 (C.D. Cal. Feb. 2, 2012) ("The Court finds that plaintiffs' conspiracy claim fails because they have not alleged an underlying wrong"). Stated differently, because the underlying cause of action sounds in fraud, the civil conspiracy allegations do as well, and must comply with Rule 9(b). *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 990-91 (9th Cir. 2006) (holding that plaintiffs were required to plead California civil conspiracy claims with particularity where the object of the agreement was fraud).

Indeed, to the extent plaintiffs allege a conspiracy between Blakey and the Blakey entities, they have failed to plead the elements of such a claim. Under California law "[t]o state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Cellular Plus, Inc. v. Superior Court*, 14 Cal.App.4th 1224, 1236 (1993) (quoting *Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305, 316 (1968)).

More fundamentally, under California law, an entity can conspire to commit a tort only if it owes an independent duty to the person asserting injury. See *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514 (1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already

14

**C.      Whether Plaintiffs Have Stated a Claim for Securities Fraud**

**1.      Legal Standards Governing Section 10(b) and Rule 10b-5**

Rule 10b-5, promulgated by the Securities and Exchange Commission pursuant to Section 10(b) of the 1934 Act, makes it unlawful for any person to use "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). Specifically,

---

owes the duty and is not immune from liability based on applicable substantive tort law"); *Doctors' Company v. Superior Court*, 49 Cal.3d 39, 44 (1989) ("A cause of action for civil conspiracy may not arise, however, if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty"). As the fraud claims have been dismissed and the conspiracy claim fails, the court need not address this issue at this time. It notes, however, that plaintiffs have not alleged facts that would show any form of duty running from the Blakey entities to them.

Additionally, the agent immunity doctrine states that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their own advantage." *Applied Equipment Corp.*, 7 Cal.4th at 512 n. 4 (quoting *Wise v. Southern Pacific Co.*, 223 Cal.App.2d 50, 72 (1963)). The rule derives from the well-established principle that "[a] corporation cannot conspire with itself any more than a private individual can, and . . . the acts of the agent are the acts of the corporation . . . . [Thus, t]o hold that a subordinate employee of a corporation can be liable for conspiring with the corporate principal would destroy what has heretofore been the settled rule that a corporation cannot conspire with itself." *Black v. Bank of America*, 30 Cal.App.4th 1, 6 (1994) (citations omitted). This doctrine may also bar claims that Blakey conspired with his related companies.

Like their conspiracy allegation, plaintiffs' conclusory allegation that the entities aided and abetted Blakey's fraud fails because plaintiffs have not adequately pled the underlying tort. See *Yazdanpanah v. Sacramento Valley Mortg. Group*, No. C 09-02024 SBA, 2009 WL 4573381, *5 (N.D. Cal. Dec. 1, 2009) ("Plaintiff has failed to allege a viable claim for fraud. Because there is no viable underlying tort alleged, Plaintiff's claim for aiding and abetting is dismissed as well. . ."); *Wynn v. Nat'l Broadcasting Co., Inc.*, 234 F.Supp.2d 1067, 1114 (C.D. Cal. 2002) ("In order to establish a cause of action for aiding and abetting discrimination, Plaintiffs must first allege that the discrimination occurred. Since the Court has previously dismissed Plaintiffs' discrimination claims without prejudice, Plaintiffs cannot proceed with this claim of aiding and abetting, until such time as they have properly alleged discrimination by a particular employer or group of employers"); see also *Richard B. Levine, Inc. v. Higashi*, 131 Cal.App.4th 566, 573 (2005) ("It is unclear from plaintiff's operative fourth amended complaint whether it was relying on a conspiracy theory or an aiding and abetting theory. But it doesn't matter. Under either legal avenue, summary judgment was properly granted because Higashi's liability is dependent upon the commission of an underlying tort by OCHI and its partners, a claim decided adversely to plaintiff in the prior arbitration").

15

one may not "(a) . . . employ any device, scheme, or artifice to defraud; (b) . . . make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) . . . engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

The elements of a section 10(b) or Rule 10b-5 violation are (1) the misrepresentation or omission of a material fact, (2) made with scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss and damages, and (6) loss causation.[53]    *Dura*

---

[53]Defendants do not dispute plaintiffs' allegation that their investments in the various schemes described in the complaint are "securities" for purposes of the Act. (Complaint, ¶ 94.) The Ninth Circuit applies a three-part test in determining what constitutes a security. It requires that there be "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others." *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003) (internal quotation marks omitted, citing *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946)). In fashioning this test, the Ninth Circuit has been "mindful of the remedial purpose of the Securities Acts, as well as the Supreme Court's repeated rejection of a narrow and literal reading of the definition of securities." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009); see also *Cordas v. Specialty Restaurants, Inc.*, 470 F.Supp. 780, 783 (D. Or. 1979) ("The Securities Exchange Act is remedial legislation. One of its most important purposes is to protect investors through the requirement of full disclosure by issuers of securities").

Plaintiffs' securities fraud claim does not identify the investments on which it is based. However, most of the investment relationships described in the complaint appear to satisfy the Ninth Circuit's broad standard. The complaint alleges that the Fodors (1) invested money; (2) in exchange for shares in various companies in which Blakey was a co-investor or promoter; (3) with the goal of profiting from the investment. See *Rubera*, 350 F.3d at 1091 (declining to adopt a "strict interpretation" of common enterprise prong "in favor of a more flexible focus on 'whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise,'" quoting *SEC v. Glenn W. Turner Enters.*, 474 F.2d 476, 482 (9th Cir.1973)).    The one exception is Blakey's sale of "investment grade watches" to Peter Fodor. Based on the allegations in the complaint, the sale does not appear to have been part of a "common enterprise" designed to generate profit. Indeed, the complaint specifies that "[t]his was the only investment in which [ ]Blakey did NOT state he was co-investing with Peter [Fodor]. . . ." (Complaint, ¶ 83.) This "investment" appears in fact to have been a straight sale, rather than an ongoing transaction involving a common enterprise. Consequently, the court does not rely on factual allegations concerning the "investment grade watches" in analyzing whether plaintiffs' securities fraud claim

16

*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005); see also *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (en banc); *McCormick v. Fund American Companies, Inc.*, 26 F.3d 869, 875 (9th Cir. 1994). "Scienter" refers to "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

### 2. Legal Standard Governing the Pleading of Securities Fraud Claims

Rule 9(b)'s particularity requirements apply to securities fraud claims. *In re Daou Systems, Inc.*, 411 F.3d 1006, 1027-28 (9th Cir. 2005) ("It is well established that claims brought under Rule 10b-5 and section 10(b) must meet the particularity requirements of Federal Rule of Civil Procedure 9(b)"). In 1995, Congress passed the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, which amended the Securities Exchange Act of 1934. The PSLRA modifies Rule 9(b)'s particularity requirement, "providing that a securities fraud complaint [must] identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); see *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 996 (9th Cir. 1999).

In addition to pleading falsity adequately, a complaint must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(2) (emphasis added). "To qualify as 'strong' within the intendment of § 21D(b)(2) . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and *at least as compelling as any opposing inference of nonfraudulent intent*." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (emphasis added). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss. . . . The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23 (emphasis original).

---

must be dismissed.

17

The Ninth Circuit has articulated a "two-part inquiry for scienter: first, [the court must] determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegation is sufficient, . . . the court [must] conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *New Mexico State Investment Council v. Ernst & Young*, 641 F.3d 1089, 1095 (9th Cir. 2011) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991-92 (9th Cir. 2009)).[54]  The Ninth Circuit has also clarified that "plaintiffs 'must plead, in great detail, facts that constitute strong

---

[54]The Supreme Court's decision in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011), could be read as disfavoring the Ninth Circuit's two-step approach. In *Matrixx*, the Court relied on its earlier decision in *Tellabs* in conducting a collective review of the facts, rather than parsing individual allegations.  See *id.* at 1324 ("In making this determination, the court must review 'all the allegations holistically,'" citing *Tellabs*, 551 U.S. at 326); see also *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) ("Our former method of reviewing each allegation individually before reviewing them holistically risks losing the forest for the trees.  Furthermore, after *Tellabs*, conducting an individual review of myriad allegations is an unnecessary inefficiency").

*Zucco*, a post-*Tellabs* case, specifically noted the Supreme Court's instruction that courts view plaintiffs' allegations of scienter holistically, but stated that consideration of individual scienter allegations was still pertinent when comparing whether the inference of knowledge or recklessness plaintiffs seek to have drawn is at least as compelling as any competing inference.  See *Zucco*, 552 F.3d at 991-92 ("[W]e recognize that *Tellabs* calls into question a methodology that relies exclusively on a segmented analysis of scienter.  We read *Tellabs* to mean that our prior, segmented approach is not sufficient to dismiss an allegation of scienter.  Although we have continued to employ the old standards in determining whether a plaintiff's allegations of scienter are as cogent or as compelling as an opposing innocent inference, we must also view the allegations as a whole").

In *Matrixx*, the Supreme Court affirmed a Ninth Circuit decision that explicitly used the two-step approach in deciding that plaintiffs had adequately pled scienter.  *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009) ("We must first 'determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter.'  If not, we are to 'conduct a "holistic" review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness,'" citing *Zucco*, 552 F.3d at 992).  The Supreme Court did not disapprove or even comment on the circuit court's methodology.  It simply "conclude[d], in agreement with the Court of Appeals, that respondents ha[d] adequately pleaded scienter." *Matrixx*, 131 S.Ct. at 1324.  Since *Matrixx* relied on *Tellabs*, and since *Zucco*'s two-step analysis was a direct response to *Tellabs*, the court follows that methodology here.

circumstantial evidence of deliberately reckless or conscious misconduct.'" *Middlesex Retirement System v. Quest Software Inc.*, 527 F.Supp.2d 1164, 1179 (C.D. Cal. 2007) (quoting *Silicon Graphics*, 183 F.3d at 974); see also *Silicon Graphics*, 183 F.3d at 977 ("recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct"). The requisite state of mind must be an "'extreme departure from the standards of ordinary care [that] presents a danger of misleading buyers that is either known to the defendant or so obvious that the actor must have been aware of it.'" *Zucco*, 552 F.3d 981, 991 (quoting *Silicon Graphics*, 183 F.3d at 984). If plaintiffs rely on allegations of recklessness, the pleading standard requires that they "state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Silicon Graphics*, 183 F.3d at 979.

When determining whether plaintiffs have alleged facts showing a strong inference of scienter, the court must draw all reasonable inferences from the allegations in the complaint, including inferences unfavorable to plaintiffs. *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). "However, the 'inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences." . . . [T]he inference of scienter must be more than merely "reasonable" or "permissible[,]" [however] – it must be cogent and compelling . . . in light of other explanations.'" *Middlesex Retirement System*, 527 F.Supp.2d at 1179 (quoting *Tellabs*, 551 U.S. at 314). Moreover, the Ninth Circuit treats the falsity and scienter analyses as "a single inquiry, because falsity and scienter are generally inferred from the same set of facts." *In re New Century*, 588 F.Supp.2d 1206, 1227 (C.D. Cal. 2008) (citing *In re Read–Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003), and *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).

If the complaint does not contain adequate allegations of falsity and scienter, it must be dismissed. 15 U.S.C. § 78u- 4(b)(3)(A).[55] In enacting the PSLRA, "Congress 'impose[d]

---

[55]The PSLRA creates a "safe harbor" for "forward-looking" statements that are immaterial, are limited by "meaningful cautionary statements," or are made without actual knowledge of their falsity. 15 U.S.C. §§ 77z-2(c), 78u-5(c). Such statements include, but are not limited to, statements of future economic performance and management plans and objectives. 15 U.S.C.

heightened pleading requirements in actions brought pursuant to § 10(b) and Rule 10b-5.'" *Tellabs*, 551 U.S. at 320 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). "Plaintiffs must "demonstrate that a particular statement, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991)). They must allege "why the disputed statement was untrue or misleading *when made*." *In re Glenfed, Inc. Securities Litig.*, 42 F.3d at 1549 (emphasis added). The PSLRA's heightened pleading requirement "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler*, 540 F.3d at 1061 (citing *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002)).

### 3.    Whether Plaintiffs Have Adequately Pled Falsity and Scienter

Plaintiffs' plaintiffs' securities fraud claim fails because it does not satisfy Rule 9(b)'s particularity requirement. It also fails to meet the PSLRA's exacting pleading requirements in that (1) it does not plead falsity with sufficient particularity, and (2) does not raise the "strong inference" of scienter required to survive dismissal.

As noted, the PSLRA requires that "a securities fraud complaint identify: [1]each statement alleged to have been misleading; [2] the reason or reasons why the statement is misleading; and, [3] if an allegation . . . is made on information and belief, all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The court has already noted that plaintiffs have largely failed

§§ 77z-2(i), 78u-5(i). This "safe harbor" has much the same effect as the "bespeaks caution" doctrine, which provides that forward-looking representations that contain adequate cautionary language or risk disclosure protect a defendant from securities liability. See, e.g., *Plevy v. Haggerty*, 38 F.Supp.2d 816, 830 (C.D. Cal. 1998).

to identify the specific statements alleged to have been fraudulent or deceptive, and why those statements were misleading. For example, plaintiffs allege that in May 2011 they eventually "became suspicious" of Blakey's qualifications as an investment advisor.[56] They fail to allege why Blakey's representations regarding his qualifications were untrue, however. They also assert that the diamonds they were induced to purchase were less valuable than they expected them to be, but do not address why this fact necessarily renders false Blakey's earlier representations regarding their worth. Plaintiffs' allegations regarding the EuroTech deal state that Blakey sold his one-third interest in the company to Goldsmith in a "surreptitious manner" in violation of the company's member agreement.[57] This allegation does not suggest that Blakey made any specific misrepresentation, however. The complaint asserts that "[t]he Fodors did not discover that [ ]Blakey had abandoned the business and sold out his interest until 2009 or 2010,"[58] but does not allege facts concerning when and how they purportedly discovered the truth. Similar problems bedevil allegations concerning the remaining investment schemes, which plead in conclusory fashion that Blakey deceived plaintiffs in various ways without adequately describing why his statements were false.[59] Plaintiffs' allegations regarding the Pylon International scheme, for instance, assert only that Blakey stated that "the investment was safe because [he] was investing the same amount of money" as the Fodors;[60] they do not state that this representation was false

---

[56]Complaint, ¶ 38.

[57]*Id.*, ¶ 43.

[58]*Id.*, ¶ 47.

[59]See, e.g., ¶ 45 (alleging that Blakey did not invest money in EuroTech, "but instead used funds belonging to the Fodors as [his] capital contribution to the company," but failing to plead the factual basis for this belief); *id.*, ¶ 69 (stating in conclusory fashion that Blakey "used the Fodor's money[ ] to grubstake himself"); *id.*, ¶ 71 ("In 2011 the Fodors became suspicious of Mr. Blakey's qualifications. . . . They discovered that Mr. Blakey had bought [the Charlie Air] aircraft for approximately $1,000,000 each, not the $1,900,000 each purchase price that he stated"); *id.*, ¶ 80 (repeating, without additional factual support, that the Fodors "became suspicious" of Blakey).

[60]*Id.*, ¶ 56.

and do not plead facts indicating the investment was unsafe.

While the complaint's allegations establish that the Fodors made a number of bad investment decisions, and perhaps even that they placed their trust in the wrong person, given the deficiencies noted, they do not meet the PSLRA's rigorous requirements regarding the pleading of falsity. See *In re Accuray, Inc. Sec. Litig.*, 757 F.Supp.2d 936, 945 (N.D. Cal. 2010) ("It is difficult to prove falsity by questioning whether certain deals should have been included in backlog based on the later removal of contracts from backlog. Hindsight and the former opinions of former employees do not generally rise to the level of falsity"); *New York State Teachers' Retirement Systems v. Fremont Gen. Corp.*, CV No. 07–5756 (FMC) (FFMx), 2009 WL 3112574, \*7 (C.D. Cal. Sept. 25, 2009) ("[E]ven taking all the factual allegations in the SAC as true, they are less likely to support an inference of securities fraud than they are to support an inference of profoundly misguided corporate mismanagement").

The complaint's allegations also fail to raise a strong inference of scienter. Scienter is a state of mind greater than mere indifference or recklessness. See *Zucco*, 552 F.3d at 991 (observing that "'although facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness,'" quoting *Silicon Graphics*, 183 F.3d at 976)); *Daou Systems, Inc.*, 411 F.3d at 1015 (holding that a complaint "must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness"); *In re Medicis Pharmaceutical Corp. Securities Litig.*, 689 F.Supp. 2d 1192, 1202 (D. Ariz. 2009) ("In a securities claim under § 10(b), 'recklessness only satisfies scienter' when it 'reflects some degree of intentional or conscious misconduct,'" quoting *Silicon Graphics*, 183 F.3d at 977)). In addition, when analyzing a complaint, a court must examine all reasonable inferences that can be drawn from the allegations, including those unfavorable to plaintiffs. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *New Mexico State Investment Council*, 641 F.3d at 1095. Consequently, only if the totality of all reasonable inferences indicates

22

that scienter is at least as likely as any innocent explanation can a complaint survive dismissal under the PSLRA.

Plaintiffs' complaint fails this standard both when its individual allegations are examined in isolation and when they are examined in totality. The analysis above explains why the individual allegations fail to allege that defendants acted with scienter. In an attempt to buttress these allegations, plaintiffs plead additional "facts" relevant to scienter. They allege that Blakey failed to make various disclosures "in order to keep the Plaintiffs from learning of the risks inherent in the investments, with the intention that [the Fodors] should invest in ignorance,"[61] that Blakey and his affiliate companies "knew that these representations . . . were untrue and were recklessly made with a wanton disregard for the truth,"[62] and that "Blakey failed to disclose pertinent facts for the purpose and intent of deceiving Plaintiffs."[63] This amalgam of conclusory assertions is unsupported by particularized facts showing scienter and utterly devoid of the requisite specificity. The allegations, therefore, must be discounted in their entirety in assessing the adequacy of the securities fraud claim.

Nor are plaintiffs' allegations in combination sufficient to raise a strong inference of scienter. When considering the totality of a plaintiff's pleading, "[v]ague or ambiguous allegations are . . . considered as a part of [the] holistic review . . . [because] the federal courts . . . need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *South Ferry*, 542 F.3d at 784. In conducting a holistic review, however, "[e]ven if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Zucco*, 552 F.3d at 1006. As the Supreme Court has instructed, the analysis is a comparative one. *Tellabs*, 551 U.S. at 310 ("The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the

---

[61]*Id.*, ¶ 98.

[62]*Id.*, ¶ 99.

[63]*Id.*, ¶ 101.

23

plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff").

The complaint, taken as a whole, indicates that Blakey was not particularly skilled or capable at identifying good investments, and perhaps even that he overstated or inflated his qualifications to gain the Fodors' trust. While it might be said to give rise to an inference that Blakey was also deceptive, given plaintiffs' repeated failure to plead falsity with specificity, the inference is, at best, a weak one. The inference that plaintiffs were credulous investors who placed their trust in the wrong person is just as likely. Even if Blakey overstated his qualifications and was not as good an investment advisor as he claimed to be, plaintiffs' current allegations indicate only that their investments failed to generate the returns they expected. They do not solidly support an inference that Blakey deliberately defrauded the Fodors and channeled their money into investments he *knew at the time* were destined to fail in order to profit. Absent the pleading of specific facts showing that the representations Blakey made were false, and identifying the reasons they are false, the complaint does not satisfy the PSLRA's pleading standard.

This is not to say that affording plaintiffs leave to amend would be futile. Plaintiffs may be able to satisfy the pleading standard if they identify, with specificity, the factual basis for their claims. In future pleadings, plaintiffs are advised to heed the court's instructions in *In re Autodesk, Inc. Securities Litigation*, 132 F.Supp.2d 833 (N.D. Cal. 2000). The court directed plaintiffs to

"[s]tate particular facts giving rise to a strong inference of a degree of recklessness that strongly suggests actual intent to deceive;

a. If plaintiffs allege that defendants received or possessed documents or information that was at odds with the alleged false or misleading statement, state all the relevant facts supporting this belief;

b. If plaintiffs allege that the information was contained in documents, state the title, date, and contents of such documents (with particularity), the identity of the person or persons who drafted such

24

documents, the identity of the person or persons who reviewed such documents, how plaintiffs learned of the existence of the documents, and how plaintiffs know that defendants received these documents;

c. If plaintiffs allege that the information was in a form other than written, state the source or sources of their information (how they learned of this information allegedly possessed by defendants) and how they know that the defendants possessed this information").

*Id.* at 846.

In sum, for all the reasons stated, the court dismisses plaintiffs' securities fraud claim.[64]

---

[64]Given plaintiffs' failure to plead a viable securities fraud claim, the court declines to address defendants' arguments regarding the liability of the "Blakey entity defendants" and whether plaintiffs have sufficiently pled loss causation.  The court offers a brief observation regarding the former issue, however.  Plaintiffs' securities fraud claim includes an allegation similar to that found in their fraud claims, i.e., that the Blakey entities "concealed assets belonging to Plaintiffs," that Blakey uses the entities to "confuse the tracing of assets," that the entities were "converters" of plaintiffs' assets, and that they were "aiders, abettors, and co-conspirators in his scheme. . . ." (Complaint, ¶ 104.) Plaintiffs' aiding and abetting theory of liability fails since "§ 10(b) liability [does] not extend to aiders and abettors." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008); see also *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("We reach the uncontroversial conclusion, accepted even by those courts recognizing a § 10(b) aiding and abetting cause of action, that the text of the 1934 Act does not itself reach those who aid and abet a § 10(b) violation.  Unlike those courts, however, we think that conclusion resolves the case").  The same analysis applies to plaintiffs' conspiracy claims. *Cooper*, 137 F.3d at 624 ("After *Central Bank*, there is no private right of action for 'conspiracy' liability under the securities laws"); *Burnett v. Rowzee*, 561 F.Supp.2d 1120, 1125 (C.D. Cal. 2008) ("There is no private 'aiding and abetting' or 'conspiracy' liability under § 10(b) of the Securities and Exchange Act, or Rule 10b–5"); see also *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 692 (7th Cir. 2008) ("When a federal tort statute does not create secondary liability, so that the only defendants are primary violators, the ordinary tort requirements relating to fault, state of mind, causation, and foreseeability must be satisfied for the plaintiff to obtain a judgment").  Consequently, plaintiffs cannot hold the Blakey entities liable for Blakey's conduct under either an aiding and abetting or conspiracy theory – plaintiffs must plead facts supporting a securities fraud claim against the Blakey entities directly.  The complaint fails to do so.  The securities fraud allegations refer almost exclusively to representations that Blakey made, and barely mention the related entities.  While the claim includes a passing reference to the "Blakey Companies' oral representations and representations in the written materials," neither it claim nor factual

25

## C.    Whether Plaintiffs Have Stated a Claim Under California Penal Code § 496(c)

Plaintiffs also assert a claim under California Penal Code § 496(c), which provides a civil remedy for the receipt, sale, or concealment of stolen property. CAL. PEN. CODE § 496(c) (stating that any person injured by a crime involving the purchase or receipt of stolen property may "bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees"); see also *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal.App.4th 1, 18 (2009) ("Penal Code section 496, subdivision (a) provides criminal penalties for every person who sells property knowing it to be stolen. Subdivision (c) of that statute provides that '[a]ny person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees'"), disapproved of on other grounds in *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 484-85 (1998) ("The factual allegations of the second amended complaint state that Merrill Lynch knowingly received property obtained from appellants by means of fraudulent representations. These allegations are sufficient to state a cause of action for receipt of property obtained by means of theft under California law").[65]

---

allegations incorporated in the claim by reference describe these purported representations in any respect. (See *id.*, ¶ 102.)

[65]The complaint pleads that Blakey directly defrauded plaintiffs of their money. Section 496(a) is designed to penalize not the original theft, but the "withholding, concealing, and selling [of] stolen property." *Naftzger v. American Numismatic Society*, 42 Cal.App.4th 421, 432 (1996). It "imposes a continuing affirmative duty to restore stolen property to its rightful owner." *Id.* The statute explicitly provides, however, that "[a] principal in the actual theft of the property may be convicted pursuant to this section. . . . [N]o person may be convicted both pursuant to this section and of the theft of the same property." CAL. PEN. CODE § 496(a); *People v. Strong*, 30 Cal.App.4th 366, 373 (1994) ("[T]he fact that the defendant stole the property no longer bars a conviction for receiving, concealing or withholding the same property. The thief may be convicted either of the theft or (upon a suitable showing) of receiving, but not both").

It therefore appears that § 496(c) permits a claim to be brought against the party that allegedly stole the property, although that person cannot be convicted *both* of the underlying theft and the receipt of stolen property. There is, however, an exception to this rule – "[w]hile a thief may not be convicted, based on the same conduct, of both theft and concealment, because they

26

This claim is also subject to Rule 9(b)'s requirements. "Rule 9(b) applies . . . to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *F.T.C. v. Lights of America, Inc.*, 760 F.Supp.2d 848, 852 (C.D. Cal. 2010) (quoting *Davis v. Chase Bank U.S.A., N.A.*, 650 F.Supp.2d 1073, 1089–90 (C.D. Cal. 2009)). As the Ninth Circuit explained in *Vess*:

> "In [some] cases, . . . a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. . . . The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct. . . . Thus, if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim." 317 F.3d at 1103-04.

A claim under Penal Code § 496(c) does not inherently sound in fraud. However, in stating the factual basis of their § 496(c) claim, plaintiffs "reallege and reassert" the preceding 141 paragraphs of their complaint.[66] Thus, the § 496(c) claim asserts no new supporting facts; it contends only that "[d]efendants have bought, received, or concealed property in violation of . . .

are part of a single process, a thief who commits a new act of concealment entirely separate from the theft may be prosecuted for the later concealment." *Id.* (citing *People v. Swinney*, 46 Cal.App.3d 332, 337 (1975)). Consequently, the fact that Blakey purportedly committed the initial fraud does not prevent plaintiffs from suing him under § 496(c).

It also appears that a defendant need not actually be convicted under § 496(a)-(b) before a civil claim can be brought against him under § 496(c). See *City of Atascadero*, 68 Cal.App.4th at 485 ("The factual allegations of the second amended complaint state that Merrill Lynch knowingly received property obtained from appellants by means of fraudulent representations. These allegations are sufficient to state a cause of action for receipt of property obtained by means of theft under California law").

[66]*Id.*, ¶ 142.

Section 496," i.e., the "funds paid for the investments."[67] As a result, plaintiffs' § 496 claim relies almost entirely on the preceding allegations of fraudulent conduct, and must comply with Rule 9(b) as a result.

As explained, the complaint fails sufficiently to allege that defendants' conduct was fraudulent; therefore, it fails to allege that Blakey and his associated entities procured or received stolen "funds paid for the investments."[68] As defendants correctly note, moreover, plaintiffs "do[] not actually identify any stolen property, let alone the receipt, concealment, or sale of such property."[69] Consequently, plaintiffs' sixth claim for relief must be dismissed.[70]

### D.      Whether Plaintiffs Have Stated a Breach of Contract Claim

Plaintiffs also plead a cause of action for breach of contract. To allege breach of contract under California law, they must plead: (1) the existence of a contract; (2) their performance of the contract, or a legally cognizable excuse for nonperformance; (3) defendants' breach; and (4) resulting damage. *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001); *Careau & Co. v. Sec. Pacific Bus.Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990). In contrast to allegations sounding in fraud, this claim is not subject to Rule 9(b). See *F.D.I.C. v. GB Escrow, Inc.*, No. CV 11–05318 ODW (JCG), 2011 WL 4550831, *4 (C.D. Cal. Sept. 28, 2011) ("Plaintiff's breach of contract claim is not grounded in fraud and thus must only meet the pleading standard of Rule 8"); *Just Film, Inc. v. Merchant Services, Inc.*, No. C 10-1993 CW, 2010 WL 4923146, *18 (N.D. Cal. Nov. 29, 2010) ("The Court understands Plaintiffs to allege that they were fraudulently induced to enter into their contracts, in that they were led to believe that the forms they signed contained all material terms of the agreements, and that the contracts were later breached. While the former is subject to Rule 9(b), the latter is not. Thus, Plaintiffs'

---

[67]*Id.*, ¶ 144.

[68]*Id.*, ¶ 144.

[69]MTD at 11.

[70]As plaintiffs have failed to state a viable § 496(c) claim, their aiding and abetting and conspiracy claims based on the receipt of stolen property also fail.

breach of contract claims are subject to the general pleading standard set forth in Rule 8"); see also *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 998 (N.D. Cal. 2009) ("In cases where fraud is not an essential part of the plaintiff's claim, only averments of fraudulent conduct must comply with Rule 9(b)'s heightened pleading standard.").

Plaintiffs allege vaguely that defendants "tendered a series of unsellable stock certificates, membership interests, promissory notes, and the like, as alleged above."[71] The complaint suggests that plaintiffs did not "receive[ ] [any] asset of value pursuant to the terms of the investments," and that this constituted a breach of contract.  They also allege that defendants failed to make financial disclosures, hold annual meetings, and observe corporate formalities "in derogation of both statutorily imposed duties, and specific contractual duties. . . ."[72]  These allegations suggest that the existence and terms of the contracts referenced is alleged elsewhere in the complaint.  The pleading, however, contains no such allegations.  Stated differently, while the breach of contract claim is purportedly based on "the terms of the investments" and "specific contractual duties," the complaint is devoid of allegations describing those terms and duties.[73]  Because the terms of the contract(s) are insufficiently alleged, it is also not possible to discern whether plaintiffs have performed their obligations or been excused from doing so, or whether a breach of the contract(s) has been sufficiently alleged.

The one contractual violation identified in the complaint is Blakey's purported breach of the EuroTech LLC member agreement.  Paragraph 43 alleges that unknown to Peter Fodor, Blakey sold his one-third interest in the company to Goldsmith "in a surreptitious manner . . . in derogation of Peter's rights under the LLC member agreement.[74]  The complaint alleges that the member agreement required that before any member sold his interest in the company, he make

---

[71]Complaint, ¶ 107.

[72]*Id.*, ¶ 109.

[73]While plaintiffs' opposition also references "investment contracts," it does not identify where in the complaint the existence of the contracts is alleged. (Opp. at 8.)

[74]*Id.*, ¶ 43.

29

"full disclosure" to the other members, and afford them a chance to purchase his interest at the same price.[75] While the terms of the contract are not clearly alleged, breach of the member agreement may give rise to a claim. Once again, however, plaintiffs have failed to plead their own performance of the contract (or excuse for nonperformance), and have not alleged that they incurred any damages as a result of Blakey's purported breach. Without such allegations, a claim based on breach of the member agreement fails. Consequently, the court dismisses plaintiffs' breach of contract claim.[76]

**E.      Whether Plaintiffs' Declaratory Relief Claim Is Sufficiently Definite**

Under Rule 12(e) of the Federal Rules of Civil Procedure, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." FED.R.CIV.PROC. 12(e). Motions for more definite statement

> ". . . are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules. Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted. A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made. Such a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994) (internal citations omitted).

"Thus, a motion for a more definite statement should not be granted unless the defendant literally

---

[75]*Id.*, ¶ 44.

[76]The complaint contains various allegations concerning liability releases signed in connection with Blakey's assignment of his interest in certain companies to Fodor. (See, e.g., *id.*, ¶ 70.) While the Fodors assert that the assignments were "obtained under duress and in an ufair manner without proper warnings that they should seek their own independent legal counsel," *id.*, this fact is pled to address preemptively a potential defense to their claims. Plaintiffs do not appear to assert a breach of contract claim based on the assignment agreements.

30

cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996); see also *United States v. Ragan*, No. CV 10-7654 RSWL (MANx), 2011 WL 2940354, *2 (C.D. Cal. July 21, 2011) ("A motion for a more definite statement fails where the complaint is specific enough to apprise the moving party of the substance of the claim being asserted").

Defendants' motion for more definite statement challenges plaintiffs' declaratory relief claim. This claim incorporates all prior paragraphs in the complaint and alleges that "an actual controversy has arisen between Plaintiffs on the one hand and Mr. Blakey, Goldsmith, the Blakey Entity defendants and the Investment Companies on the other hand, as to the various Investments, and the organizational documents and certificates of the Investment Companies on the other hand."[77] Then it pleads allegations common to most declaratory relief claims, e.g., that "[a] judicial determination as to the respective rights of the parties is necessary and appropriate."[78] It seeks an injunction, contending that defendants' "wrongful conduct, unless and until enjoined and restrained by order of the court, will cause great and irreparable injury," and asserts that "[p]laintiffs have no adequate remedy at law for the injuries currently being suffered in that it will be impossible for Plaintiffs to determine the precise amount of damage that they will suffer if Defendants' conduct is not restrained."[79] Similarly, in the prayer for relief, plaintiffs seek what appears to be injunctive relief, requesting an order "(1) prohibiting Mr. Blakey from selling, transferring or encumbering his house [ ]purchased with funds belonging to the Plaintiffs, and (2) prohibiting Mr. Blakey and the Blakey Entities from accepting funds or disbursing funds, beyond ordinary and reasonable living expenses, so as to preserve assets for the Plaintiffs' recovery. . . ."[80] The prayer also seeks "an Order by this court declaring the rights of the

[77]Complaint, ¶ 162.

[78]*Id.*, ¶ 163.

[79]*Id.*, ¶ 165.

[80]*Id.* at 29.

parties."[81]

Defendants argue that they are unable to respond to the claim because they do not understand "what Plaintiffs are seeking . . . or the grounds upon which they seek it."[82] Defendants' confusion is understandable, given that plaintiffs have mixed the elements of a claim for injunctive relief with allegations typical of a declaratory relief claim. This uncertainty renders the claim's basis murky and opaque, as well as creating confusion about the relief plaintiffs seek. Moreover, the declaratory relief claim purportedly seeks a declaration of "the rights of the parties," but it is difficult to discern what kind of declaration plaintiffs desire. See *Godfrey v. Ross*, No. CIV. 2:11–2308 WBS EFB, 2011 WL 6012607, *6 (E.D. Cal. Dec. 1, 2011) (granting a motion for more definite statement where the complaint offered "[n]o further specification of the type of injunctive relief requested . . . in the Complaint" than the statement that "TONY ROSS still hates MICAH GODFREY" and "Plaintiff will suffer irreparable injury unless injunctive relief is granted"); see also *Sagan*, 874 F.Supp. at 1077 ("A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made."). Cf. *Woodson v. IBM, Inc.*, No. C 05-3387 JF, 2006 WL 3742211, *4 (N.D. Cal. Dec. 19, 2006) ("Simply identifying a broad range of statutes applicable to the relevant subject matter is not an adequate substitute for informing a defendant of the rights it has allegedly violated"). Plaintiffs seek a declaration of rights "as to the various Investments, and the organizational documents and certificates of the Investment Companies on the other hand." As it stands, the allegation is not intelligible.

This confusion is only heightened by the fact that the claim seeks both declaratory and injunctive relief. Requiring plaintiffs to provide a more definite statement of their declaratory relief claim would (1) allow defendants and the court to determine whether it is, in reality, a claim for injunctive relief and (2) if it is a declaratory relief claim, to clarify its basis and the specifics

---

[81]*Id.*

[82]Motion at 17.

32

of the declaration plaintiffs seek.[83] Consequently, the court grants defendants' motion for more definite statement.

### III. CONCLUSION

For the reasons stated, defendants' motion to dismiss and their motion for more definite statement are granted. Plaintiffs may file an amended complaint within twenty (20) days of the date of this order.

DATED: February 21, 2012

_Margaret M. Morrow_

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[83]Insofar as defendants seek a more definite statement of the factual basis for the claim, the court's ruling on the motion to dismiss addresses those concerns. See *Stanislaus Towing & Recovery Services, Inc. v. City of Modesto*, No. 1:11–cv–01344 LJO DLB, 2011 WL 5375000, *10 (E.D. Cal. Nov. 4, 2011) ("Defendants confusingly invoke Federal Rule of Civil Procedure 12(b)(6)'s *Twombly* and *Iqbal* standards within their Rule 12(e) motion, arguing that 'more than conclusory allegations are needed to give a defendant the requisite notice of the claim,' that 'inferences cannot be accepted if they are unsupported by the alleged facts, nor can the court accept purely legal conclusions masquerading as factual allegations,' and that '[t]he Complaint therefore fails to state a claim upon which relief can be granted.' The standards are not interchangeable"); *Ragan*, 2011 WL 2940354 at *5 (observing that motion for more definite statement "attacks unintelligibility in a pleading, not mere lack of detail").

33